O

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| WILLIAM F. GALTNEY, JR., § | |
| SUSANNE W. GALTNEY, § | |
| GALTNEY FAMILY INVESTORS, LTD., § | |
| and FLINDERS VENTURES LLC, § | |
| § | |
| Plaintiffs, § | |
| § | |
| v. § | |
| § | CIVIL ACTION NO. H-05-583 |
| KPMG LLP, DEUTSCHE BANK AG, § | |
| DEUTSCHE BANK TRUST COMPANY § | |
| AMERICAS (successor to § | |
| BANKERS TRUST COMPANY), § | |
| DEUTSCHE BANK SECURITIES, INC., § | |
| PRESIDIO ADVISORY SERVICES § | |
| LLC, and BONA STRATEGIC § | |
| INVESTMENT FUND LLC, § | |
| § | |
| Defendants. § | |

MEMORANDUM AND ORDER

Pending are Defendants Deutsche Bank AG's, Deutsche Bank Trust Company Americas's, and Deutsche Bank Securities, Inc.'s Motion to Dismiss and Compel Arbitration (Document No. 3), Defendant KPMG LLP's Motion for a Limited Stay (Document No. 12), and Defendant Presidio Advisory Services LLC's Motion to Stay Proceedings Pending Arbitration, or Alternatively, for Additional Time to Respond to Petition (Document No. 23).  After carefully considering the motions, responses, reply, additional submission, and the applicable law, the Court concludes as follows:

I.  Background

Plaintiffs seek damages allegedly sustained from participation in a tax-advantaged investment strategy known as Bond Linked Issue Premium Structure ("BLIPS"). Plaintiffs plead that in September, 1999, Defendant KPMG, LLP ("KPMG") convinced them to enter into a contract under which KPMG, in exchange for substantial fees, would provide to Plaintiffs accounting and tax consulting services with respect to BLIPS, which KPMG had designed and developed. According to Plaintiffs, BLIPS involved a complicated series of transactions orchestrated and implemented by KPMG with the help of Defendants Deutsche Bank AG, Deutsche Bank Trust Company Americas, Deutsche Bank Securities, Inc. (collectively, the "Deutsche Bank Defendants"), which among other things loaned $95 million to Plaintiffs, and Presidio Advisory Services LLC ("Presidio"), which allegedly provided investment advisory and foreign currency trading services as part of the BLIPS strategy. Presidio also acted as an investment advisor for Defendant Bona Strategic Investment Fund LLC ("BSIF"), an entity created by Plaintiffs and several Presidio-controlled companies at KPMG's direction.

Plaintiffs further plead that in 2000 they paid additional fees to KPMG for opinions attesting to the propriety of BLIPS under federal income tax laws--and opining that the strategy would "more likely than not" be upheld if challenged by the IRS. In 2002, however, Plaintiffs learned that the IRS had begun investigating

their 1999 tax returns, particularly with respect to Plaintiffs' use of BLIPS. Plaintiffs then hired KPMG to represent them before the IRS, which ultimately determined BLIPS to be a potentially abusive tax shelter and disallowed certain offsets to Plaintiffs' capital gains. As a result, Plaintiffs contend, they were required to pay millions of dollars in taxes and interest on their underpayment. Plaintiffs thereafter filed this suit in Texas state court, asserting claims against KPMG for accounting malpractice, breach of contract, and breach of fiduciary duty; and against the Deutsche Bank Defendants, Presidio, and BSIF for aiding and abetting breach of fiduciary duty.

The Deutsche Bank Defendants removed the action to the Southern District of Texas, citing statutory provisions that implement the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention"), 9 U.S.C. § 201 et seq. The Deutsche Bank Defendants now move to compel arbitration on all of Plaintiffs' claims against them. KPMG, which would prefer to move to compel arbitration, instead seeks a stay of this case for 60 days for Plaintiffs to decide on whether to opt out of a putative class action suit against KPMG in Arkansas, and Presidio moves for a stay pending completion of the arbitration sought to be compelled by the Deutsche Bank Defendants.

II. Discussion

A. Jurisdiction

"Title 9 of the United States Code contains both the [Federal Arbitration Act ("FAA")] and the U.S. implementing legislation for the Convention." Freudensprung v. Offshore Technical Servs., Inc., 379 F.3d 327, 338-39 (5th Cir. 2004).[1] Deutsche Bank invokes Section 205 of Title 9 as the basis for removal:

> Where the subject matter of an action or proceeding pending in a State court relates to an arbitration agreement . . . falling under the Convention, the defendant or the defendants may, at any time before the trial thereof, remove such action or proceeding to the district court of the United States for the district and division where the action or proceeding is pending.

9 U.S.C. § 205; *see* Ruhrgas AG v. Marathon Oil Co., 119 S. Ct. 1563, 1568 n.3 (1999). Under Fifth Circuit precedent, "[a] district court will have jurisdiction under § 205 over just about any suit in which a defendant contends that an arbitration clause falling under the Convention provides a defense." Beiser v. Weyler, 284 F.3d 665, 669 (5th Cir. 2002).

Generally an arbitration agreement "falls under the Convention" if it "aris[es] out of a legal relationship, whether

---

[1] Plaintiffs said they would challenge the Court's jurisdiction in a motion to remand, but that motion has not been filed. Regardless, the Court must first consider whether it has jurisdiction.

4

contractual or not, which is considered as commercial, including a transaction, contract, or agreement described in section 2 of this title. . . ."  9 U.S.C. § 202; *see* Freudensprung, 379 F.3d at 340; Bautista v. Star Cruises, 396 F.3d 1289, 1297 (11th Cir. 2005).  As the Deutsche Bank Defendants point out, Plaintiff William F. Galtney, Jr. ("Galtney"), in his capacity as the "sole member" of Plaintiff Flinders Ventures LLC ("Flinders"), signed a letter agreement (the "Letter Agreement") from Defendant Deutsche Bank Securities, Inc. ("DBSI") dated September 9, 1999.  *See* Document No. 1 ex. A.  In the Letter Agreement, Galtney represented that Flinders intended "to borrow funds from Deutsche Bank, AG, Cayman Islands Branch," and to execute transactions with or through DBSI involving certain "Growth Strategies."  *See* id.  Several days later, Galtney, again acting as the sole member of Flinders, signed a "Customer's Agreement" with DBSI.  *See* id. ex. B.  Under the Customer's Agreement, Flinders agreed to a certain terms and conditions in exchange for DBSI's acceptance of Flinders's account and agreement to act as its broker in the purchase and sale of securities and/or commodities. Among other things, Flinders agreed that, except in certain circumstances, "**all controversies which may arise between us concerning any transaction of construction, performance, or breach of this or any other agreement between us, whether entered into prior, on or subsequent to the date hereof, shall be determined by arbitration**."  Document No. 1 ex. B ¶ 14.

Thus, this arbitration agreement arises out of a commercial legal relationship between Flinders and DBSI.

However, the Convention adds the following qualification:

> An agreement . . . arising out of such a relationship which is *entirely between citizens of the United States* shall be deemed not to fall under the Convention unless that relationship involves property located abroad, envisages performance or enforcement abroad, or has some other reasonable relation with one or more foreign states.

9 U.S.C. § 202 (emphasis added); *see* Freudensprung, 379 F.3d at 339-40 (stating that because both parties to agreement containing arbitration clause were U.S. citizens, court would examine whether lack of foreign citizen as party to the agreement rendered the Convention inapplicable). For purposes of § 202, both Flinders and DBSI are considered U.S. citizens. *See* 9 U.S.C. § 202. Thus, for the arbitration agreement to fall under the Convention, the commercial legal relationship between Flinders and DBSI must involve property located abroad or envisage performance abroad; or there must be "a reasonable connection between the parties' commercial relationship and a foreign state that is independent of the arbitral clause itself." *See* Freudensprung, 379 F.3d at 340-41 (citing Lander Co. v. MMP Inv., Inc., 107 F.3d 476, 481-82 (7th Cir. 1997)). The Flinders-DBSI relationship meets this requirement. For example, the Letter Agreement expresses Flinders's intent to borrow funds from the Cayman Islands Branch of

Defendant Deutsche Bank AG, a stock corporation organized under the laws of the Federal Republic of Germany. Furthermore, shortly after entering the Customer's Agreement, Flinders signed a "Credit Agreement" under which the Cayman Islands Branch of Deutsche Bank AG agreed to loan Flinders $152 million. *See* Document No. 1 ex. D § 2.01. Thus, the Flinders-DBSI arbitration agreement "falls under the Convention" within the meaning of §§ 202 and 205.

Given that both DBSI and Flinders are signatories to the Customer's Agreement containing the arbitration provision, and given Plaintiffs' allegation that DBSI knowingly assisted KPMG in breaching its fiduciary duty regarding the BLIPS transactions, "it is at least conceivable that the arbitration [provision] will impact the disposition of the case." Beiser, 284 F.3d at 669. Accordingly, DBSI meets the "low bar" for removal jurisdiction under § 205.

B.   The Deutsche Bank Defendants' Motion to Compel Arbitration

"A two-step inquiry governs whether parties should be compelled to arbitrate a dispute. 'First, the court must determine whether the parties agreed to arbitrate the dispute. Once the court finds that the parties agreed to arbitrate, it must consider whether any federal statute or policy renders the claims non-arbitrable.'" Banc One Acceptance Corp. v. Hill, 367 F.3d 426, 429 (5th Cir. 2004) (quoting R.M. Perez & Assoc., Inc. v. Welch, 960

7

F.2d 534, 538 (5th Cir. 1992)). The first step requires the court to determine according to state law (1) whether the parties have a valid agreement to arbitrate; and (2) whether the dispute falls within the scope of that arbitration agreement. *See* id. Although a strong federal policy favors arbitration, the policy does not apply to the initial question of whether there is an agreement to arbitrate. *See* id. Once a court determines that an arbitration agreement exists, however, the court "must pay careful attention to the strong federal policy favoring arbitration and must resolve all ambiguities in favor of arbitration." Id.

1.   Who is Bound to Arbitrate?

Only Flinders and DBSI are the signatories to the Customer's Agreement containing the arbitration provision. Nevertheless, *all* Deutsche Bank Defendants seek to compel arbitration against *all* Plaintiffs. "Who is actually bound by an arbitration agreement is a function of the intent of the parties, as expressed in the terms of the agreement." Bridas, S.A.P.I.C. v. Gov't of Turkmenistan, 345 F.3d 347, 355 (5th Cir. 2003), *cert. denied* 124 S. Ct. 1660 (2004). Generally, even "'a signatory may not estop a nonsignatory from avoiding arbitration regardless of how closely affiliated that nonsignatory is with another signing party.'" Id. at 361 (quoting MAG Portfolio Consultant, GMBH v. Merlin Biomed Group, LLC, 268 F.3d 58, 62 (2d Cir. 2001)). Nevertheless, the Deutsche Bank

Defendants argue, "'a party may be estopped from asserting that the lack of his signature on a written contract precludes enforcement of the contract's arbitration clause when he has consistently maintained that other provisions of the same contract should be enforced to benefit him.'" Washington Mut. Fin. Group, LLC v. Bailey, 364 F.3d 260, 268 (5th Cir. 2004) (quoting International Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH, 206 F.3d 411, 418 (4th Cir. 2000)(citations and quotations omitted)); see Bridas, 345 F.3d at 361-62 ("Direct benefits estoppel applies when a nonsignatory 'knowingly exploits the agreement containing the arbitration clause.'")(quoting E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S., 269 F.3d 187, 199 (3d Cir. 2001)).  There is no showing, however, that the non-signatory Plaintiffs (William F. Galtney, Jr. in his personal capacity, Susanne W. Galtney, and Galtney Family Investors, Ltd.) knowingly "exploited" the Customer's Agreement.  The non-signatory plaintiffs accuse the Deutsche Bank Defendants of aiding and abetting KPMG's alleged breach of fiduciary duty, but without premising the claim on or making any reference to the Customer's Agreement and the covenants made therein between Flinders and DBSI. *See* Bridas, 345 F.3d at 362 (explaining that cases where courts "seriously consider applying direct benefits estoppel" are those in which "the nonsignatory had brought suit against a signatory premised in part upon the agreement"); Bailey, 364 F.3d at 268

9

(estopping non-signatory plaintiff where she sought to recover on transaction that contained an arbitration agreement which she simultaneously attempted to avoid); DuPont, 269 F.3d at 200 (explaining that direct benefits estoppel cases involve non-signatories "who, during the life of the contract, have embraced the contract despite their non-signatory status but then, during litigation, attempt to repudiate the arbitration clause in the contract"). Although the Deutsche Bank Defendants argue that the non-signatory Plaintiffs received substantial tax savings as a result of the overall BLIPS scheme, they make no showing that the non-signatory Plaintiffs received a *direct* benefit from the Customer's Agreement as such. *See* MAG Portfolio Consultant, 268 F.3d at 58 ("[T]he benefit derived from an agreement is indirect where the nonsignatory exploits the contractual relation of parties to an agreement, but does not exploit (and thereby assume) the agreement itself."); InterGen N.V. v. Grina, 344 F.3d 134, 146 (1st Cir. 2003) (declining to apply equitable estoppel because the record "did not support a claim that InterGen embraced the contracts and sought to derive direct benefits from them during their currency").[2] The Deutsche Bank Defendants have not

---

[2] Plaintiff William F. Galtney, Jr.'s signing of the Customer's Agreement as Flinders's agent does not, *ipso facto*, subject him personally to the arbitration clause. *See* Westmoreland v. Sadoux, 299 F.3d 462, 466 (5th Cir. 2002) ("An agent is not ordinarily liable under the contract he executes on behalf of his principal, so long as his agency is disclosed . . . .").

10

established that the non-signatory Plaintiffs can be compelled to arbitrate under a "direct benefits" theory of estoppel.

The non-signatory Defendants Deutsche Bank AG ("DBAG") and Deutsche Bank Trust Company Americas ("DBTCA") also seek to compel arbitration with Flinders, which *is* a signatory to the Customer's Agreement. The Fifth Circuit holds that, in certain circumstances, non-signatories may compel signatories to arbitrate on a theory of equitable estoppel:

> There are two circumstances under which a nonsignatory can compel arbitration. First, when the signatory to a written agreement must rely on the terms of the written agreement in asserting its claims against the non-signatory. Second, when the signatory to the contract raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract.

Westmoreland v. Sadoux, 299 F.3d 462, 467 (5th Cir. 2002); *see* Hill v. Gen. Elec. Power Sys., Inc., 282 F.3d 343, 348 (5th Cir. 2002); Grigson v. Creative Artists Agency, L.L.C., 210 F.3d 524, 527 (5th Cir. 2000).[3] DBAG and DBTCA contend that Flinders "relies" on the Customer's Agreement in bringing its aiding/abetting breach of fiduciary duty claim, because the Customer's Agreement was part of the "complicated series of transactions" behind the BLIPS strategy. The fact that Flinders's claim may "touch" matters covered by the Customer's Agreement, however, does not mean that Flinders relies

---

[3] The test is not rigid, and "each case turns on its facts." *See* Hill, 282 F.3d at 348.

on the *express terms* of the Customer's Agreement in asserting its tort claim against DBAG and DBTCA. See Hill, 282 F.3d at 348-49. Nevertheless, it is uncontroverted that Plaintiffs allege substantially interdependent and concerted misconduct by DBAG, DBTCA, and signatory DBSI. For example, Plaintiffs allege that these Defendants assisted KPMG in "orchestrat[ing] every step of the BLIPS strategy," and "knowingly gave substantial assistance to KPMG's wrongful acts." Document No. 1 ex. 3 ¶¶ 18, 44. Flinders argues that estoppel should not apply, however, because it would be inequitable to permit DBAG and DBTCA "to invoke the benefits of a contract they chose not to sign." Document No. 21, at 9-10.

"'The lynchpin for equitable estoppel is equity' and the point of applying it to compel arbitration is to prevent a situation that 'would fly in the face of fairness.'" See Hill, 282 F.3d at 349 (quoting Grigson, 210 F.3d at 528). While the mere fact that a plaintiff alleges interdependent and concerted misconduct between a signatory and non-signatory does not invariably entitle the non-signatory to compel arbitration, see id., equitable estoppel is appropriate in the circumstances presented by the instant case. For example, in addition to Plaintiffs' conflated allegations against the Deutsche Bank Defendants, the Letter Agreement between Flinders and DBSI recites that DBSI acts as agent for its affiliates, including specifically DBAG. *See* Document No. 4 ex. A. Other agreements also allude to the agency relationship. *See*,

12

*e.g.*, ex. B at 10 (Disclosure Statement); <u>InterGen</u>, 344 F.3d at 147-48 (explaining that an agent can commit its nonsignatory principal to an arbitration agreement if the agency relationship is relevant to the legal obligation in dispute).  Thus, enough has been shown to permit not only DBSI but also DBAG and DBTCA to invoke the arbitration provision of the Customer's Agreement against Flinders.

2.   <u>Application of the Arbitration Provision</u>

As set forth above, parties seeking to compel arbitration must show that there is valid agreement to arbitrate and that the dispute in question falls within the scope of that agreement.  *See* <u>Banc One Acceptance Corp.</u>, 367 F.3d at 429.  It is uncontroverted that the arbitration provision contained in the Customer's Agreement is valid, but Flinders contends that its claim for aiding and abetting breach of fiduciary duty falls outside the scope of that provision.  The arbitration provision states that it encompasses **"all controversies which may arise between us concerning any transaction of construction, performance, or breach of this or any other agreement between us."**  Document No. 1 ex. B ¶ 14.  This clause, applying to "*all controversies*" that arise "*concerning any transaction* of . . . this [Customer's Agreement] or *any other agreement* between us" is a broad arbitration clause.  (Emphasis added.)  *Cf.* <u>Pennzoil Exploration and Prod. Co. v. Ramco</u>

Energy, Ltd., 139 F.3d 1061, 1067 (5th Cir. 1998) ("[C]ourts distinguish 'narrow' arbitration clauses that only require arbitration of disputes 'arising out of' the contract from broad arbitration clauses governing disputes that 'relate to' or 'are connected with' the contract."). The agreements between Flinders and the Deutsche Bank Defendants all appear to have been integral both to their and to Flinders's participation in the BLIPS strategy, and Flinders's claim against the Deutsche Bank Defendants for aiding and abetting a breach of fiduciary duty regarding the BLIPS strategy necessarily "concerns" transactions of these agreements between Flinders and the Deutsche Bank Defendants. Moreover, any doubt is resolved in favor of arbitration. *See* Banc One Acceptance Corp., 367 F.3d at 429; Personal Security & Safety Sys., Inc. v. Motorola Inc., 297 F.3d 388, 392 (5th Cir. 2002) ("[A] valid agreement to arbitrate applies unless it can be said with positive assurance that [the] arbitration clause is not susceptible of an interpretation which would cover the dispute at issue.") (internal quotations omitted).[4]

---

[4] If a court determines that parties have agreed to arbitrate certain claims, the court must then assess "whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims." Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 105 S. Ct. 3346, 3355 (1985); First Options of Chi., Inc. v. Kaplan, 115 S. Ct. 1920, 1924 (1995); *see* Banc One Acceptance Corp., 367 F.3d at 429. No such constraints apply or are alleged to apply to the instant case.

Flinders argues, however, that arbitration cannot proceed because of an additional condition imposed by the Customer's Agreement:

> **No person shall bring a putative or certified class action to arbitration, nor seek to enforce any pre-dispute arbitration agreement against any person who has initiated in court a putative class action; who is a member of a putative class who has not opted out of the class with respect to any claims encompassed by the putative class action until; (x) the class certification is denied; (y) the class is decertified; or (z) the customer is excluded from the class by the court.  Such forbearance to enforce an agreement to arbitrate shall not constitute a waiver of any rights under this agreement except to the extent stated therein.**

Document No. 1 ex. B ¶ 14.  It is uncontroverted that Plaintiffs are members of a putative class in a state court action in Arkansas against (among others) DBAG, DBSI, Presidio, and KPMG.[5]  Although the plaintiffs' class action complaint in Becnel is quite lengthy, it does not include the claim filed here by Flinders for aiding and abetting a breach of fiduciary duty.  *See* Document No. 14 ex. 2, at 63-75.  Accordingly, the pendency of Becnel does not preclude the arbitration of Flinders's claim against the Deutsche Bank Defendants.

---

[5] Thomas R. Becnel, et al. v. KPMG LLP, et al, Case No. CV-2005-18, Circuit Court of Clark County, Arkansas.  *See* Document No. 14 ex. 2.

C.    Presidio's Motion to Stay

Defendant Presidio, which states that it is not a party to an arbitration agreement and does not consent to arbitration, nonetheless moves for a stay of Plaintiffs' action against it pending completion of the arbitration sought by the Deutsche Bank Defendants.  Title 9 U.S.C. § 3 provides that where suit is brought "upon any issue referable to arbitration under an agreement in writing for such arbitration," the court, upon being satisfied that the issue involved is indeed referable to arbitration under the agreement, "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement. . . ."  Id.; Waste Mgmt., Inc. v. Residuos Industriales Multiquim, S.A. de C.V., 372 F.3d 339, 342 (5th Cir. 2004).  A non-signatory to the arbitration agreement, such as Presidio here, has "standing to apply for a stay when the litigation involves 'any issue referable to arbitration.'" Waste Mgmt., 372 F.3d at 342-43 (quoting 9 U.S.C. § 3).  Plaintiffs plead their claim of aiding and abetting a breach of fiduciary duty against both Presidio and the Deutsche Bank Defendants, and the claim against all is based on the same set of operative facts. Persidio's motion for a stay will therefore be granted pending the outcome of the arbitration of that issue between Flinders and the Deutsche Bank Defendants.

D.   Defendant KPMG's Motion for a Limited Stay

Defendant KPMG contends that it is entitled to compel arbitration just as the non-signatory Deutsche Bank Defendants DBAG and DBTCA.  KPMG concedes, however, that it is presently precluded from making that motion because Plaintiffs are members of the class in the Becnel case, the nationwide putative class action filed in Arkansas against KPMG, which alleges one of the same claims alleged against KPMG in this case.  KPMG therefore moves for a limited stay of 60 days in which Plaintiffs should be required to choose whether they will participate as plaintiffs in Becnel.  In the alternative, KPMG argues that it is entitled to a stay of this litigation pending the outcome of the arbitration sought to be compelled by the Deutsche Bank Defendants.

KPMG has not cited any authority for its idea to set a limited period of time for Flinders to decide whether it will participate in the putative class action in Arkansas on the one issue that overlaps with its claim against KPMG in this case.  Under the circumstances, it appears that the better course is to stay further proceedings in this case against KPMG until such time as KPMG is able to move to compel arbitration, which it apparently has standing to do given Flinders's allegations against KPMG of substantial interdependent and concerted misconduct with signatory DBSI.  *See* Westmoreland, 299 F.3d at 467; Grigson, 210 F.3d at 527.

III. <u>Order</u>

Based on the foregoing, it is

ORDERED that Defendants Deutsche Bank AG's, Deutsche Bank Trust Company Americas's, and Deutsche Bank Securities, Inc.'s Motion to Dismiss and Compel Arbitration (Document No. 3), Defendant Presidio Advisory Services LLC's Motion to Stay Proceedings Pending Arbitration (Document No. 23), and Defendant KPMG LLP's Motion for a Limited Stay (Document No. 12), are all GRANTED IN PART as follows:  All further proceedings in this case are STAYED against all Defendants pending the outcome of an arbitration between Plaintiff Flinders Ventures LLC and Defendants Deutsche Bank AG, Deutsche Bank Trust Company Americas, and Deutsche Bank Securities, Inc., in accordance with the arbitration clause contained in the Customer's Agreement.  The foregoing motions are in all other respects DENIED.  It is further

ORDERED that the parties within six months after the date of entry of this Order, and at successive intervals of six months thereafter shall file a joint status report to advise the Court on the progress of the arbitration.

The Clerk will enter this Order and provide a correct copy to all counsel of record.

SIGNED at Houston, Texas, on this 19th day of May, 2005.

_____
EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE

19